The ESTATE OF Helen C. NOELL, by and through its Personal Representative, Appellant (Plaintiff),

v.

NORWEST BANK WYOMING, N.A., formerly known as Norwest Bank Casper, N.A., Appellee (Defendant).

No. 97-292.

Supreme Court of Wyoming.

June 22, 1998.

Richard G. Miller of Richard G. Miller, P.C., Casper, for Appellant (Plaintiff).

Bruce N. Willoughby and Joseph D. Richer of Brown, Drew, Massey & Sullivan, Casper, for Appellee (Defendant).

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN & LEHMAN, JJ.

MACY, Justice.

Appellant Estate of Helen Noell (the estate) appeals from the summary judgment which was entered in favor of Appellee Norwest Bank Wyoming, N.A. (the bank).

We affirm.

## ISSUE

The estate presents a single issue for our review:

I. Did the trial court [err] in ruling that the bank did not breach its fiduciary duty when it disbursed the corpus of the trust to another financial institution, after the death of the trustor, contrary to the express terms of the trust?

## FACTS

The material facts in this case are undisputed. William Noell and Helen Noell, the trustors, entered into a trust agreement with the bank, the trustee. William died on January 5, 1987, leaving Helen as his surviving spouse and the sole trustor. Helen faxed a letter to the bank on August 31, 1992, directing it to deliver all the trust assets to Delaware Charter Guarantee and Trust Company, the successor trustee, and releasing the bank, upon delivery of the assets, of its responsibilities as trustee. Helen died on September 11, 1992.

The bank mailed a check in the amount of $107,777.42 to Delaware Charter on September 17, 1992. Upon discovering that the check had been cut for an incorrect amount, the bank placed a stop payment on the check. The bank reissued the check on September 22, 1992, in the amount of $107,177.42. It issued a second check payable to Delaware Charter on October 6, 1992, in the amount of $116.72.

The estate sued the bank, alleging that the bank breached its fiduciary duty to the trustor and to the estate and that the bank acted negligently by transferring the trust funds to Delaware Charter. The bank moved for a summary judgment, and the estate countered with a motion for a partial summary judgment. After a hearing on the matter, the district court granted the bank's motion. The estate appeals from that order.

## STANDARD OF REVIEW

A summary judgment is appropriate when no genuine issue as to any material fact exists and when the prevailing party is entitled to have a judgment as a matter of law. *Covington v. W.R. Grace–Conn., Inc.*, 952 P.2d 1105, 1106 (Wyo.1998). When a dispute does not exist with regard to the material facts, the question presented for our review is a question of law. *Rist v. Taylor*, 955 P.2d 436, 437 (Wyo.1998). We do not accord special deference to the district court's decisions on matters of law. *Id.*

## DISCUSSION

The estate contends that the bank ignored the express terms of the trust agreement and breached its fiduciary duty when it failed to transfer the trust assets to Helen's estate and that its failure to transfer the trust assets defeated the general purpose of the trust agreement. The bank counters that the trust agreement was revoked on August 31, 1992, upon Helen's written direction and that Helen's intervening death did not affect her August 31st revocation.

The trust agreement at issue provided in relevant part:

ARTICLE II RIGHTS RESERVED BY TRUSTOR: Trustor reserves the right to direct distributions from the trust estate, add other property acceptable to the Trustee to the trust estate, amend this agreement in any respect, provided that any amendment shall not affect the duties and responsibilities of the Trustee without its consent, and revoke this trust entirely or withdraw at any time or from time to time any part of the trust estate upon reasonable notice to Trustee and upon indemnification of the Trustee to its satisfac-

tion against liabilities incurred in the administration of the trust.

. . . .

ARTICLE IV DISTRIBUTIONS FROM THE TRUST:

. . . .

3. On the death of Trustor, the Trustee shall distribute the trust estate then remaining as follows:

To the estate of the surviving settlor. Helen's August 31, 1992, letter stated:

I, Helen C. Noell, hereby authorize and direct Norwest Bank Wyoming Casper, N.A., FKA Norwest Bank Casper, N.A., Trustee, to transfer the funds in my trust, the Helen C. Noell Trust, dated July 7, 1986 to Delaware Charter Guarantee and Trust Company, Successor Trustee, P.O. Box 8963, Wilmington, Delaware 19899.

Upon delivery of the assets to Delaware Charter Guarantee and Trust Company, the undersigned releases and discharges said Norwest Bank Wyoming Casper, N.A., Trustee[,] from any further obligation or responsibility with respect to said Trust account, and hereby ratifies, approves, and confirms all acts and things done and not done by said Trustee in the administration of said Trust account, including without limiting the foregoing: all acts of said Trustee in purchasing, selling, exchanging or retaining assets and in investing funds of the Trust account, in paying compensation to itself, and all other disbursements paid as shown by the Trustee's accounts, hereby settles and allows said Trustee's accounts are true, correct, and complete.

■ "A trust agreement is governed by the plain meaning contained in the four corners of the document." *Hronek v. Saint Joseph's Children's Home,* 866 P.2d 1305, 1307 (Wyo.1994). A settlor who has reserved the power to revoke his trust may validly revoke the trust pursuant to the trust's terms. 2 RESTATEMENT (SECOND) OF TRUSTS 2D § 330 (1959).

■ The Kansas Supreme Court considered the issue of whether a letter revoking a trust agreement effectively revoked the trust even though the trust assets had not been transferred when the trustor died a few weeks later. *State Bank of Parsons v. First National Bank in Wichita,* 210 Kan. 647, 504 P.2d 156, 158–59 (1972). The court held:

By signing and delivering the letter to the trustee, settlor completed the only step required by the agreement for revocation of the trust. The obvious conclusion must be, and we so hold, that when a trust agreement provides in plain and unambiguous language for revocation by written notice to the trustee of settlor's present intent to revoke, such notice to the trustee is, without more, sufficient to effect revocation. Applied here, this means settlor could by letter delivered to the trustee revoke the trust.

504 P.2d at 160. We agree with the Kansas Supreme Court's analysis and apply it to the case at bar.

■ Helen's letter specifically directed the bank to transfer the trust funds to Delaware Charter pursuant to her reserved right to revoke the trust agreement. She effectively revoked the trust agreement on August 31, 1992, and the only actions the bank could take then were those actions which would accomplish the transfer of the funds within a reasonable time.

The estate's claim that Article IV, Section 3 of the trust agreement required the bank to distribute the trust assets to Helen's estate upon her death presumes that the trust agreement was still in effect at the time of Helen's death. This is a fundamental flaw in the estate's argument. The trust agreement was revoked on August 31, 1992, and Helen's death did not render that revocation void. Transfer of the trust assets was not a prerequisite to revocation of the trust agreement, and the fact that the bank did not accomplish the transfer before Helen died is of no consequence.

Affirmed.