James FRANKS, Appellant (Plaintiff),

v.

Linne OLSON;  and GESCO Management
Corp., a Wyoming corporation,
Appellees (Defendants).

No. 97–147.

Supreme Court of Wyoming.

March 5, 1999.

Vance Countryman of Hooper Law Offices, P.C., Riverton, Wyoming, Representing Appellant.

Michael Rosenthal and Dominique D.Y. Cone of Hathaway, Speight & Kunz, Cheyenne, Wyoming, Representing Appellees.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

THOMAS, Justice.

The primary issue in this case is whether James Franks (Franks) is foreclosed from

* Chief Justice at time of expedited conference;    retired November 2, 1998.

recovering damages for personal injuries from Linne Olson, a retired President and General Manager of L.M. Olson, Inc., because of the provisions of the Wyoming Worker's Compensation Act, Wyo. Stat. Ann. §§ 27–14–101 through 27–14–805 (Michie Repl.1991). Franks sought recovery for injuries he sustained when concrete blocks in a retaining wall that was being rebuilt fell on him, alleging that Linne Olson was negligent in designing the project. Franks was employed by L.M. Olson, Inc. (Olson), and Linne Olson had been retained as a casual employee by Olson for the project of rebuilding the retaining wall. The major question depends on whether Linne Olson was an employee of Olson. The trial court ruled that Linne Olson was an employee of Olson, and it entered summary judgment in favor of Linne Olson. The record discloses no genuine issues of material fact relating to Linne Olson's employment status, and liability on his part is foreclosed by the provisions of the Wyoming Worker's Compensation Act. The Order Granting Motion for Summary Judgment of Defendant Linne Olson is affirmed.

A second issue is raised with respect to whether Linne Olson and two other individuals, who were employees of Olson, also were employed by GESCO Management Corp. (GESCO) so that it could be sued under a theory of vicarious liability. Consistent with its ruling about the status of Linne Olson, the trial court determined that all three were employees of Olson, not GESCO. Based on that ruling, a summary judgment also was entered in favor of GESCO. On this question, the record discloses no genuine issues of material fact, and the law correctly was applied to those facts. GESCO has no vicarious liability as an employer of any of the individuals named in the complaint. The Order Granting Motion for Summary Judgment of Defendant GESCO Management Corp. is affirmed.

In the Brief of Appellant, filed on behalf of Franks, these issues are raised:

Whether Linne Olson, hereafter referred to as Linne, was a co-employee of the Appellant as defined by and therefore entitled to Summary Judgment as a matter of law.

Whether there was an issue of fact precluding the entry of Summary Judgment in favor of GESCO.

In the Brief of Appellees, filed on behalf of Linne Olson and GESCO, the issues that are raised are stated in this way:

A. Did the trial court properly grant summary judgment to defendant/appellee Linne Olson?

B. Did the trial court properly grant summary judgment in favor of defendant/appellee GESCO Management Corporation ("GESCO")?

The Reply Brief of Appellant does not set forth any additional issues.

In 1989, Linne Olson was the President and General Manager of Olson. When he retired in December of 1990, his son, Gregg Olson, assumed his duties, and continues in the positions of President and General Manager. Counting stock owned by his wife, Linne Olson remained a majority shareholder in Olson. He serves as a member of the board of directors, and receives a fee for attending meetings. During the year of 1989, Olson commenced the construction of a building in Rawlins on a tract of land that was owned by the corporation. Linne Olson was active when the project was started, but he retired before it was completed.

In order to create a level surface for parking at the new building, Olson built a barrier on the east side of the property. The barrier consisted of two foot by two foot by four foot concrete blocks placed end to end on top of the ground surface at the property boundary. Each of those blocks weighed approximately 2,500 pounds. Fill dirt then was packed against the blocks to create the level parking surface. After it was completed, the building was leased to the Bureau of Land Management (BLM), and Olson later sold the property to another party who continued to lease it to the BLM.

The lot adjacent to the parking area was utilized for a trailer court, which is owned by Jewell Withrow. In 1991, the Withrows recognized that the vegetation on the property bordering the BLM building was dying. Investigation disclosed that, at the time the parking lot was constructed, a layer of the

defoliant was spread upon the ground beneath the asphalt to retard weed growth. It appeared that the defoliant had migrated under the retaining wall and onto the Withrow property. Ron Withrow, the ex-husband of Jewell Withrow, contacted Linne Olson about the problem.

Linne Olson had enjoyed a long friendship and business relationship with Ron Withrow, and Linne Olson and Gregg Olson agreed that Linne would work on the problem with Withrow, on behalf of Olson. A series of meetings occurred between Linne Olson, Gregg Olson, and Ron Withrow, and Olson agreed to treat the contaminated soil to neutralize the defoliant and to build a new retaining wall. Linne Olson designed the plans for the new retaining wall between the properties. Ron Withrow, who had extensive excavating experience, contracted to perform all the excavating work, with the remaining work on the project to be accomplished by Olson.

Linne Olson delivered his sketch of the retaining wall to the Olson supervisor, and Olson's employees worked at the job site for several days prior to the accident that is the subject matter of this case. They had been tearing down the old fence, removing fence posts, and clearing away bushes and other debris. Franks joined the Olson crew, consisting of two other Olson employees, for the first time on May 13, 1992, and the accident occurred on the same day.

At the time the crew arrived, Withrow already had started using a backhoe to dig a trench adjacent to the concrete blocks forming the old retaining wall. Franks and another member of the crew were working in the trench some distance away from Withrow when they heard the bucket of the backhoe strike against the blocks. One of the concrete blocks near the backhoe fell into the trench, and a domino effect resulted in which all of the concrete blocks began to topple over, one after the other. The other employee stepped out of the trench unharmed, but Franks was pinned by one of the falling blocks. He alleges injuries to his hamstring muscles, thigh, buttock and back.

In his original complaint, filed on March 14, 1995, Franks named ten defendants, including Linne Olson. Linne Olson filed a motion for summary judgment, asserting that he was employed by Olson; was a co-employee of Franks; and the Wyoming Worker's Compensation Act barred Franks' complaint for ordinary negligence. The trial court agreed with Linne Olson's position, and it granted his motion for summary judgment.

On May 13, 1996, Franks filed a First Amended Complaint in which he asserted additional claims against additional defendants, including GESCO. Franks' theory as to GESCO was that GESCO had been employed by Olson to provide management services for Olson's general contractor business. He contended that, in its management capacity, GESCO engaged the services of Linne Olson to design the retaining wall in question. Franks alleged that Linne Olson negligently designed the retaining wall project, and that his negligence was the direct and proximate cause of Franks' injuries. Franks contended that GESCO, as the employer of Linne Olson, was vicariously liable for his negligent acts.

GESCO was a party to a written agreement with Olson pursuant to which GESCO provided management services and personnel. Of particular interest in this case, GESCO provided the services of Gregg Olson, the President and General Manager of Olson, and Fred Hansen, the Controller and Corporate Secretary. The agreement provided that the services "shall be performed pursuant to the direction and control of the Board of Directors of [Olson] * * *." As consideration for these management services, Olson reimbursed GESCO for the salaries of Gregg Olson and Fred Hansen on a monthly basis. Gregg Olson explained on the record that GESCO did not exercise any direct or indirect control over Olson business operations. He also stated that GESCO provided no safety training for Olson or any of its employees. Safety training and safety information were provided by Olson supervisors at each respective job site. Whenever necessary, Fred Hansen compiled safety information to distribute to Olson supervisors. Finally, GESCO contended that Linne Olson was not employed by GESCO, and, for that

reason, Franks' claim of vicarious liability was fallacious.

GESCO relied upon this information in filing its motion for summary judgment. The trial court agreed with GESCO's position, and granted the motion for summary judgment. The trial court found that Franks had failed to present any genuine issue of material fact and that GESCO was entitled to judgment as a matter of law. Franks' appeal is taken from the respective orders granting Linne Olson's and GESCO's motions for summary judgment.

Our review of an order of the trial court granting a summary judgment is a *de novo* review. *Krier v. Safeway Stores 46, Inc.*, 943 P.2d 405, 408 (Wyo.1997); *Knudson v. Hilzer*, 551 P.2d 680, 685 (Wyo.1976). We examine the record from the perspective most favorable to the party who opposed the motion to determine whether a genuine issue exists as to any material fact that prevents disposition of the case as a matter of law. *Nowotny v. L & B Contract Industries, Inc.*, 933 P.2d 452, 455 (Wyo.1997) (*quoting Thomas by Thomas v. South Cheyenne Water and Sewer Dist.*, 702 P.2d 1303, 1304 (Wyo.1985)); *Bluejacket v. Carney*, 550 P.2d 494, 497 (Wyo.1976).

A number of years ago, we articulated the process for addressing motions for summary judgment:

The object of a motion for summary judgment is to separate what is formal or pretended in denial or averment from what is genuine and substantial so that only the latter may subject a suitor to the burden of a trial, the purpose being to eliminate formal trials where only questions of law are involved. *Vipont Mining Co. v. Uranium Research and Development Co.*, Wyo., 376 P.2d 868 (1962); and *Carter v. Davison*, Wyo., 359 P.2d 990 (1961). The formal judgment should be granted only where it is clear that no issue of material fact is involved, and where inquiry into the facts is not desirable to clarify the application of the law. *Forbes Co., Inc. v. MacNeel*, Wyo., 382 P.2d 56 (1963). Where there are genuine issues of material fact the summary judgment should not be granted. *Gilliland v. Steinhoefel*, Wyo. 521 P.2d 1350 (1974); *Kover v. Hufsmith*, Wyo., 496 P.2d 908 (1972); *McClure v. Watson*, Wyo., 490 P.2d 1059 (1971), *Low v. Sanger*, Wyo., 478 P.2d 60 (1970); *Godard v. Ridgway*, Wyo. 445 P.2d 757 (1968). On the other hand, the whole purpose of the procedural technique of a summary judgment would be defeated if cases could be forced to trial by the mere assertion that a genuine issue of material fact exists. *Maxted v. Pacific Car & Foundry Company*, Wyo., 527 P.2d 832 (1974); *LeGrande v. Misner*, Wyo. 490 P.2d 1252 (1971); *McCamon v. Darnall Realty*, Wyo., 444 P.2d 623 (1968); *In Re Wilson's Estate*, Wyo., 399 P.2d 1008 (1965). It is the duty of the trial judge to ascertain what material facts exist without substantial controversy. *Clouser v. Spaniol Ford, Inc.*, Wyo., 522 P.2d 1360 (1974). The propriety of granting a summary judgment depends then upon the correctness of the court's dual findings that there was no genuine issue as to any material fact and that the prevailing party was entitled to judgment as a matter of law. *Dixon v. Credit Bureau of Douglas*, Wyo., 419 P.2d 707 (1966).

*Johnson v. Soulis*, 542 P.2d 867, 871 (Wyo. 1975). We went on to define a material fact in *Johnson*, 542 P.2d at 872:

A fair summary * * * is that for purposes of ruling upon a motion for summary judgment a fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. Such a fact would necessarily affect the application of the appropriate principle of law to the rights and obligations of the parties. In considering a motion for summary judgment it is appropriate for a court to identify the essential elements of the plaintiff's cause or of the defense asserted, and to then determine the materiality of any fact in the light of whether it will establish or refute one of those essential elements. If it does not have that effect, it would not be a material fact in the controversy, and a genuine issue with respect to that fact, no matter how sharp, would not foreclose the granting of a motion for summary judgment.

We continue to apply this definition. *Mize v. North Big Horn Hosp. Dist.*, 931 P.2d 229, 232 (Wyo.1997).

It is appropriate for a court to enter a summary judgment when no genuine issue exists as to any material fact and the prevailing party is entitled to have a judgment as a matter of law. *Estate of Noell v. Norwest Bank Wyoming, N.A.*, 960 P.2d 499, 500 (Wyo.1998). The burden is assigned to the moving party to demonstrate initially that no genuine issue of material fact exists. *Weber v. McCoy*, 950 P.2d 548, 551 (Wyo.1997); *Gilliland v. Steinhoefel*, 521 P.2d 1350, 1352 (Wyo.1974). If the moving party successfully carries that burden, the party who opposes the summary judgment must produce evidence to demonstrate that a genuine issue of material fact exists. *Weber*, 950 P.2d at 551. We also follow the rule that we are entitled to affirm the grant of a summary judgment upon any correct legal ground appearing in the record. *Newberry v. Board of County Com'rs of Fremont County*, 919 P.2d 141, 144 (Wyo.1996).

In order to prevail in his action against Linne Olson, Franks needed to establish that Linne Olson was not an employee of Olson and, therefore, not a co-employee of Franks. Similarly, the right to recover against GESCO depends upon Linne Olson and others, who were accused of negligent acts, being identified as employees of GESCO. Our examination of the record satisfies this Court that Franks offered no evidence to demonstrate a genuine issue as to any material facts with respect to employment status, and summary judgment properly was granted to Linne Olson and GESCO.

An employee who is covered by worker's compensation with an employer who is current in its contributions must rely upon the Wyoming Worker's Compensation Act as his exclusive remedy as to his employer or co-employees acting within the scope of their employment. Wyo. Stat. Ann. § 27–14–104(a) (Michie 1997). For those claims that accrue between July 1, 1987, and February 18, 1993, a co-employee is liable for injuries only if guilty of culpable negligence. *Copp v. Redmond*, 858 P.2d 1125, 1126–27 (Wyo. 1993).[1] The culpable negligence standard would apply in this case because Franks was injured in 1992. Franks does not allege culpable negligence on the part of Linne Olson, and his claim for recovery depends upon Linne Olson not being an employee of Olson.

The Wyoming Worker's Compensation Act, in effect in 1992, defined an employee in this way:

> "Employee" means any individual entering into the service of or working under contract of services or apprenticeship with an employer engaged in an extrahazardous occupation for which compensation is paid except as provided under this paragraph. * * * "Employee" does not include any individual whose employment is purely casual and not for the purpose of the usual trade or business of the employer * * *.

Wyo. Stat. Ann. § 27–14–102(a)(vii) (Michie Repl.1991). Franks contends that Linne Olson was not an employee of Olson, and his argument is centered on the statutory requirement that an individual must receive compensation to come within the definition of "employee." Linne Olson argues that the compensation he received as a director of Olson was sufficient to bring him under the statute, but Franks asserts that the director's pay does not satisfy the requirement of compensation under the Wyoming Worker's Compensation Act.

The statutory definition does not require any minimum level of compensation. Franks relies upon the Wyoming Business Corporation Act, which provides: " '[e]mployee' includes an officer but not a director. A director may accept duties that make him also an employee[.]" Wyo. Stat. Ann. § 17–16–140(a)(viii) (Michie Repl.1989). The trial court ruled that when Linne Olson agreed to talk to the Withrows on behalf of Olson and later was engaged in designing a new retaining wall, he was "accept[ing] duties that make him also an employee[.]" Wyo. Stat. Ann. § 17–16–140(a)(viii). The additional

---

1. Since 1993, the statute immunizes co-employees from suit for all but intentional acts. Wyo.

Stat. Ann. § 27–14–104(a) (Michie 1997).

duties did not require additional wages in order to bring Linne Olson within the statutory definition of an employee. Whether the undisputed facts " ' "constitute an employment relationship is strictly a question of law." ' " *Stratman v. Admiral Beverage Corp.,* 760 P.2d 974, 980 (Wyo.1988) (*quoting Joyce v. Super Fresh Food Markets, Inc.,* 815 F.2d 943, 947 (3rd Cir.1987) and *English v. Lehigh County Authority,* 286 Pa.Super. 312, 322, 428 A.2d 1343, 1348 (1981)). In the absence of culpable negligence, Linne Olson, as a co-employee of Franks, was not liable for his injuries. The Order Granting Motion for Summary Judgment of Defendant Linne Olson is affirmed.

■ Franks' theory of recovery against GESCO was incorporated in his amended complaint in which he asserted negligence on the part of GESCO and acts of negligence on the part of various individuals, for which he alleged GESCO was vicariously liable. The negligence claim was based upon allegations that GESCO assumed responsibility for safety at Olson work sites. The claim of vicarious liability also asserted that GESCO should be liable for the acts of Linne Olson when he designed the retaining wall. The trial court granted summary judgment in favor of GESCO on both of these claims. The entry of a summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ Franks contends that GESCO employed Gregg Olson and Fred Hansen, and is liable for any negligence on their part. That contention could support liability unless Gregg Olson and Fred Hansen were borrowed servants of Olson. According to the "borrowed servant" doctrine, when one employer provides an employee to another employer, the employee becomes the "borrowed servant" of the second employer for that particular transaction. If the second employer exercises control over the "borrowed servant," the second employer assumes liability for the activities of that borrowed employee,

and the original employer is not liable for any of that employee's conduct. *Blessing v. Pittman,* 70 Wyo. 416, 251 P.2d 243, 246–47 (1952); 27 Am.Jur.2d *Employment Relationship* § 462 (1996). In determining which employer must assume liability, the court looks to the dual factors of who controls the employee and whose business the employee is furthering at the time of the accident. *Blessing,* 251 P.2d at 247. Under our law, however, the primary test to establish the existence of employment is the right of control of the alleged employer. *Claims of Naylor,* 723 P.2d 1237, 1240 (Wyo.1986) (*quoting Fox Park Timber Co. v. Baker,* 53 Wyo. 467, 84 P.2d 736, 743 (Wyo.1938)).

The factor of whose business the employee was furthering is not helpful in this case. GESCO's business consisted of providing management personnel to perform work for Olson. When Gregg Olson and Fred Hansen were engaged in the performance of their duties at Olson, they necessarily were furthering and doing the business of both employers. *Blessing,* 251 P.2d at 247. Under these circumstances, the primary test to apply is the right of control test. GESCO and Franks both contend that the "right of control" test supports their respective positions.

GESCO relies upon the management agreement which provides explicitly that services performed under the agreement "shall be performed pursuant to the direction and control of the Board of Directors of [Olson] * * *." GESCO further argues that Olson had the sole right to terminate Gregg Olson and Fred Hansen. Franks relies upon different language from the management agreement which states that management services are to be "mutually determined by both parties." In addition, Franks contends that many of the same individuals (including Gregg Olson) are directors of both GESCO and Olson. He argues that since GESCO and Olson have similar boards or directors and ownership, genuine issues of material fact exist as to who was exercising the right of control when decisions were made with respect to the job on which he was injured. Franks also asserts that the business affiliation between Olson and GESCO was not an arm's length relationship.

We have considered a similar relationship in the past, and we then decided:

"[A] business enterprise has a range of choice in controlling its own corporate structure. But reciprocal obligations arise as a result of the choice it makes. The owners may take advantage of the benefits of dividing a business into separate corporate parts, but principles of reciprocity require that courts also recognize the separate identities of the enterprises when sued by an injured employee."

*Fiscus v. Atlantic Richfield Co.,* 742 P.2d 198, 201 (Wyo.1987) (*quoting Boggs v. Blue Diamond Coal Co.,* 590 F.2d 655, 662 (6th Cir.), *cert. denied,* 444 U.S. 836, 100 S.Ct. 71, 62 L.Ed.2d 47 (1979)). Franks theorizes that two companies with such similar ownership and similar boards of directors could not isolate the actions of their dual employees for the sake of liability.

While Franks questions the GESCO structure, he did not present any evidence that GESCO had the right to control the manner and method in which Gregg Olson and Fred Hansen performed their day-to-day duties for Olson. Unsupported hypotheses do not permit us to disregard separate corporate entities. The evidence in the record demonstrates that GESCO did nothing more than provide management employees to Olson. In addition, the record establishes that the directors of Olson asserted employer-type control over Fred Hansen and Gregg Olson.

Under the process that we described earlier, GESCO made the requisite initial showing that no genuine issue of material fact existed as to Olson's right of control over Gregg Olson and Fred Hansen. The burden was then upon Franks to produce specific facts that would suffice to demonstrate the existence of a genuine issue of material fact. Franks did not produce evidence that would create any genuine issue of material fact as to the right of control over Gregg Olson and Fred Hansen. The record demonstrates that Olson controlled the actions of all members of its management team. The result is that Gregg Olson and Fred Hansen are borrowed servants, and GESCO cannot be held liable for their actions in this case. Summary judgment for GESCO, based upon that theory of vicarious liability for the acts of Gregg Olson and Fred Hansen, was appropriate.

Franks also argues that GESCO is vicariously liable for the actions of Linne Olson. He argues that Linne Olson became an agent of GESCO when he designed the retaining wall because Gregg Olson, a GESCO employee, directed him to design the project. The rationale set forth above demonstrates that Gregg Olson was subject to the right of control of Olson and that Linne Olson was an employee of Olson. Franks does not even allege that Linne Olson was also an employee of GESCO. Under the circumstances, there is a failure to produce evidence that would support any genuine issue of material fact that could possibly lead to liability on the part of GESCO for Linne Olson's actions. The Order Granting Motion for Summary Judgment of Defendant GESCO Management Corp. is affirmed.

We are satisfied that there is no reversible error in the record, and the rulings of the trial court in this case and the summary judgments granted to both Linne Olson and GESCO are affirmed.